```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND
                                  :
SENSORMATIC SECURITY CORP.
                                  :
     v.                           :  Civil Action No. DKC 2005-3473
                                  :
SENSORMATIC ELECTRONICS CORP.
                                  :
```

**MEMORANDUM OPINION**

Presently pending in this breach of contract action is the motion of Defendant Sensormatic Electronic Corporation ("Sensormatic") to dismiss the complaint filed by Sensormatic Security Corporation ("SSC"). (Paper 8). The issues are briefed fully, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court will grant Sensormatic's motion to dismiss the complaint.

**I.   Background**

**A.   Prior Litigation**

This is the third breach of contract action filed by SSC against Sensormatic. The other two actions, *Sensormatic Security Corp. v. Sensormatic Electronic Corp.*, DKC 02-cv-1565, and *Sensormatic Security Corp. v. Sensormatic Electronic Corp.*, DKC 04-cv-0174, still are pending.[1] In all three actions, SSC alleges that Sensormatic breached its Restated Franchise Agreement

---

[1] The court will identify the lawsuit filed in 2002 as *Sensormatic I* and the lawsuit filed in 2004 as *Sensormatic II.*

("Franchise Agreement") with SSC.  The Franchise Agreement gives SSC an exclusive right to sell, lease, distribute, service, repair, and maintain certain Sensormatic products in Maryland, the District of Columbia, and Virginia ("franchise territory").

In *Sensormatic I*, SSC moved for leave to file a third amended complaint to add an additional breach of contract claim against Sensormatic based upon an alleged breach of a More Favorable Contracts clause in § 21 of the Franchise Agreement.  Section 21 requires that, if Sensormatic enters into any contract with a similarly situated franchisee containing more favorable terms or conditions, the Franchise Agreement must be amended to include the more favorable terms.  According to SSC, Sensormatic breached § 21 by not notifying SSC of, or modifying SSC's agreement to include, the terms and conditions contained in an addendum to another franchise agreement between Sensormatic and a former Sensormatic franchisee in the Pennsylvania-Delaware region ("Pennsylvania franchise").  SSC contended that the addendum, "the Winner addendum," provides more favorable terms or conditions to the Pennsylvania franchisee by expanding the definition of the term "Detection Devices" to include a broader range of products, including access control products, which are not encompassed by the SSC-Sensormatic Franchise Agreement.  Based on these allegedly more favorable terms, Sensormatic allegedly breached the Franchise Agreement when it failed to notify SSC of the Winner addendum and

2

refused to incorporate the more favorable terms into the SSC-Sensormatic Franchise Agreement.

Although SSC learned of the Winner addendum on May 9, 2003, it did not seek leave to amend its complaint in *Sensormatic I* until August 28, 2003 – nearly two and one half months after the June 3, 2003, deadline set forth in the scheduling order for amendments of the pleadings.  On January 20, 2004, the court denied SSC's motion for leave to amend the complaint on the basis that SSC's lack of diligence in failing timely to amend its complaint was without good cause.  The following day, SSC filed *Sensormatic II*, asserting, almost verbatim, the same claim that the court prohibited SSC from asserting, by amendment of its complaint, in *Sensormatic I*.

Sensormatic moved to dismiss the one-count complaint in *Sensormatic II*, arguing that SSC's claim was barred under the doctrine against claim splitting and was an improper attempt to circumvent the court's denial of its motion for leave to amend. Sensormatic also asserted that the one-count complaint failed to state a claim upon which relief could be granted.  While the motion was pending, SSC filed an amended complaint that asserted the same allegations concerning the Winner addendum and added a new defendant and three additional claims involving radio frequency identification ("RFID") products.  SSC responded that the claims asserted in the amended complaint rely on significantly different facts than the claims in *Sensormatic I*, and therefore, it was not

3

barred from bringing a separate suit against Sensormatic for breach of the same Franchise Agreement.

On August 10, 2004, the court issued an Order dismissing Count I of SSC's amended complaint, which related to claims arising from the Winner addendum.  The court also dismissed the portion of Count III dealing with access control devices because these claims were based on the Winner addendum.  The court held that these claims were barred by the rule against claim splitting.  *See Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, 329 F.Supp.2d 570, 580-81 (D.Md. 2004).  The court, however, did not dismiss counts involving RFID products because these claims were based on later-occurring alleged breaches of the same Franchise Agreement.  *Id.* at 581-83.

**B.   The Current Lawsuit**

The present lawsuit was filed December 30, 2005.  SSC again seeks to invoke certain more favorable terms in the Pennsylvania franchise.  SSC alleges the following.  SSC and Sensormatic entered into a Franchise Agreement dated December 1, 1976.  The Franchise Agreement includes a "More Favorable Contact clause, which provides:

> 21. <u>More Favorable Contracts</u>.  The Franchisor agrees that if it enters into any contract with any other franchisee with respect to a franchise similar to the franchise contemplated by this Agreement which contains any terms or conditions more favorable than those described in this Agreement, then this Agreement shall immediately be deemed amended

4

> to include such terms or conditions and any other terms and conditions that were a condition to the granting of such more favorable terms and conditions, unless the Franchisee shall promptly upon notification or discovery of such amendment give notice to the Franchisor that it rejects such amendment.

On December 7, 1984, SSC and Sensormatic entered into a Settlement Agreement that amended certain provisions of the Franchise Agreement to include closed-circuit television ("CCTV") product lines. The Settlement Agreement created a commission schedule that entitled SSC to 50% of the gross profit for the sale or lease of CCTV in its territory. The Settlement Agreement did not change the commissions for other products within the scope of the Franchise Agreement, which are paid at a rate of 40% of the gross revenues as provided by § 7.

On November 30, and December 1, 1978, Sensormatic entered into a franchise agreement and a franchise lease agreement with Winner & Bagnara, Inc. ("Winner"), for a franchise for the Pennsylvania-Delaware region. The terms of the Winner franchise agreement are identical to the terms of the SSC-Sensormatic Franchise Agreement with two exceptions: the Pennsylvania franchise agreement did not include the 1984 Settlement Agreement that is part of the SSC-Sensormatic Franchise Agreement, and the Pennsylvania franchise agreement included the Winner addendum, which expands the definition of Detection Devices. With respect to the lease agreement, Sensormatic obtained all the rights and benefits of the

5

Winner franchise agreement, including the right to commissions for sales or leases of Sensormatic Equipment, and obtained the right "only to a fixed rent amount that Sensormatic paid to Winner." (Paper 1, at ¶ 31).  The term of the Winner lease agreement was for twenty years, and included a purchase option.  The option provided that at the end of the lease period, Sensormatic had the option to purchase the franchise agreement from Winner, and absent affirmative action by Sensormatic, the lease would expire and all of the rights and benefits of the Winner franchise would revert to Winner on December 1, 1998.  When the lease expired, Sensormatic intended to keep the Winner franchise agreement and attempted to invoke the purchase option.  Winner believed that Sensormatic had not validly invoked its purchase option, and repeatedly requested that Sensormatic allow Winner to resume operation of the franchise.

On May 14, 1999, Sensormatic initiated an action to determine the ownership and scope of the Pennsylvania franchise.  SSC alleges that in an Order dated May 26, 2004, the Pennsylvania court ruled that Sensormatic had not validly exercised its option, and therefore, Winner had a right to possess and operate the Pennsylvania franchise.  In addition, the court identified which products were within the scope of the Winner franchise.  The court further found that the commission schedule for CCTV products payable under the Winner franchise agreement was 40% of gross revenue, an amount "substantially more favorable to the franchisee

6

than 50% of gross profits payable to SSC under SSC's [Franchise Agreement], as amended by the Settlement Agreement." (Paper 1, at ¶¶ 39-40). The United States Court of Appeals for the Third Circuit affirmed the district court's Order on August 31, 2005, and denied a motion for rehearing on October 3, 2005.

SSC now seeks to invoke the More Favorable Contracts clause in its own Franchise Agreement in order to obtain the benefits arising from the Winner franchise agreement (specifically, the 40% of gross revenue commission for CCTV products). SSC brings the following claims: Count I, request for declaratory judgment that SSC's Franchise Agreement is amended as of August 31, 2005, to include the Winner Franchise Benefits; Count II, request for declaratory judgment that SSC's Franchise Agreement is amended as of December 1, 1998, to include the Winner Franchise Benefits; Count III, breach of contract for failing to pay a higher commission rate based on the More Favorable Contracts clause of the Franchise Agreement; Count IV, breach of the implied covenant of good faith and fair dealing for failing to treat the Franchise Agreement as amended by the more favorable terms in the Winner franchise agreement; and Count V, conversion for failing to pay the higher commissions that were included in the Winner franchise. (Paper 1, ¶¶ 14-85).

7

**II.  Standard of Review**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim' that will give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests."  *Id.* at 47; *Comet Enters. Ltd. v. Air-A-Plane Corp.*, 128 F.3d 855, 860 (4th Cir. 1997).  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the Plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).  The court must disregard the contrary allegations of the opposing party.  *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).  The court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873

(4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**III. Analysis**

All of the claims asserted in the present lawsuit arise from SSC's invocation of the More Favorable Contracts clause in the Franchise Agreement.  Based on SSC's unsuccessful attempt to include the Winner addendum claims in *Sensormatic I and Sensormatic II,* Sensormatic argues that the claims in the present lawsuit should be dismissed under the doctrine of claim splitting because this case presents the same core claim that SSC attempted to plead previously.

It is undisputed that it is within a district court's power to stay or dismiss a suit that is duplicative of another federal court suit.  *See Colo. River Water Conservation Dist. V. United States*, 424 U.S. 800, 817 (1976)("As between federal district courts, . . . the general principle is to avoid duplicative litigation."). This rule against duplicative litigation, also referred to as "claim splitting," is the "'other action pending' facet of the res judicata doctrine.'" *Davis v. Sun Oil Co*., 148 F.3d 606, 613 (6th Cir. 1998).[2]  Like res judicata, claim splitting "prohibits a

---

[2] The rule against claim splitting is based on the same principles as res judicata. Res judicata applies, however, when a
(continued...)

plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." *Myers v. Colgate-Palmolive Co.*, 102 F.Supp.2d 1208, 1224 (D.Kan. 2000)(internal citations omitted). Thus, when a suit is pending in federal court, a plaintiff has no right to assert another action "on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2nd Cir. 2000). However, a party is not barred from bringing in a subsequent action those claims that could not have been included in the original suit - even if they are related, or arise out of, the previously filed claim. *See Lawlor v. Nat'l Screen Service Corp.*, 349 U.S. 322 (1955).

In a claim splitting case, as with the traditional res judicata analysis, the second suit will be barred if the claim involves the same parties or their privies and "arises out of the same transaction or series of transactions" as the first claim. *See Trustmark Insur. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269-70 (11th

---

²(...continued)
second suit is filed after a final adjudication of a first suit and claim splitting applies when, like here, two suits are pending at the same time. Regardless of the differences in form, both doctrines intend to "foster[] judicial economy and protect[] the parties from vexatious and expensive ligation." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2nd Cir. 2000). In order to meet these objectives, courts faced with duplicative suits may stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions. *See Curtis*, 226 F.3d at 139 (citing cases in which courts took various actions).

Cir. 2002). Courts have held that a party may not pursue, in separate lawsuits, breach-of-contract claims against the same party arising out of the same contract. *See id.* at 1270 (stating that "where the second lawsuit alleges a breach of the same contract that was breached in the first, by the same party, in the same general manner, those actions constitute the factual predicate, and any claims relating to that contract should be brought in the same lawsuit"); *Prime Mgmt. Co., Inc. v. Steinegger*, 904 F.2d 811 (2nd Cir. 1990)("Thus, when the parties have entered into a contract to be performed over a period of time and one party has sued for a breach, res judicata will preclude the party's subsequent suit for any claim of breach that had occurred prior to the first suit; it will not, however, bar a subsequent suit for any breach that had not occurred when the first suit was brought."); *Smith v. Safeco Inc. Co.*, 863 F.2d 403, 404 (5th Cir. 1989) ("All of Smith's claims against Safeco sought coverage under a single insurance policy for injuries resulting from one accident. These claims arise out of a common nucleus of operative fact, and comprise a single transaction."). Thus, the court must "assess whether the second suit raises issues that should have been brought in the first." *Curtis*, 226 F.3d at 140.

SSC argues that its third suit does not constitute claim splitting. First, SSC objects to Sensormatic's argument that because the More Favorable Contracts claim alleges a breach of the

11

same Franchise Agreement at issue in *Sensormatic I* and *Sensormatic II*, it must arise out of the same transaction or series of transactions or common nucleus of operative fact. (Paper 9, at 9). SSC contends that Sensormatic's argument is inconsistent with the court's decision in *Sensormatic II*, which allowed claims involving RFID products to proceed. SSC argues: "This Court rejected Sensormatic's challenge based on claim splitting, pointing out that Sensormatic's alleged RFID breach occurred 'long after the filing of the second amended complaint' in *Sensormatic I*." *Id.* SSC insists that the breach of the More Favorable contracts clause did not occur until Winner obtained more favorable rights with respect to CCTV commissions, and that did not occur until the Third Circuit reached its decision, and therefore, these claims are not barred. *Id.*

SSC misreads the court's holding in *Sensormatic II*. The court did hold that later-occurring alleged breaches, such as those involving the RFID products, were not barred, *see Sensormatic Sec. Corp.*, 329 F.Supp.2d at 582, however, alleged breaches that occurred before the second amended complaint in *Sensormatic I were* barred, *id*. at 580-81. The court further held:

> Regardless of the specific provision that SSC alleges was breached, the factual predicate of SSC's Winner Addendum breach claim, in both *Sensormatic I* and *Sensormatic II*, is the Franchise Agreement between Sensormatic and SSC. Both lawsuits involve breaches of the same contract, committed by the same party and question the extent of the parties' agreed

12

> upon obligations. The factual issues to be resolved in both actions are not concerning the validity or scope of the Winner Addendum, but Sensormatic's obligations to SSC under the Franchise Agreement. Thus, SSC's Winner Addendum claims arise out of the same transaction and operative facts underlying the claims in *Sensormatic* I and could have been heard by the court in the earlier case had the motion to amend been timely.

*Id*. at 580. Thus, Sensormatic's argument is not inconsistent.

Moreover, the court does not agree that the alleged breach did not occur until Winner obtained more favorable rights with respect to CCTV products.[3] The fact that SSC did not know that Winner had better rights before the Pennsylvania litigation does not bar application of res judicata. "Knowledge of a potential claim however is not a requirement for application of res judicata principles." *In re Varat Enters., Inc*., 81 F.3d 1310, 1316 (4th Cir. 1996); *see also Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986)("For purposes of res judicata, it is not necessary to ask if the plaintiff knew of his present claim at the time of the former judgment, for it is the existence of the present claim, not party awareness of it, that controls."). Here, pursuant to § 21 of the Franchise Agreement, a breach occurs when Sensormatic "enters

---

[3] SSC is not consistent as to when the alleged breach occurred. SSC also claims that the breach occurred in 1998. *See* (paper 9, at 6)(stating "the event that made Winner's franchise agreement more favorable was not the Third Circuit Opinion. It was Sensormatic's unexpected failure to validly exercise its purchase option in December 1998."). Even if the court agreed that the alleged breach occurred in 1998, such a breach still occurred long before SSC filed its claims in *Sensormatic I*.

13

into any contract with any other franchisee . . . which contains any terms or conditions more favorable than those described in this Agreement." Winner's ability to receive a certain commission for the CCTV products was based on the 1978 Winner franchise agreement, which set the commission schedule, and thus any more favorable terms were agreed to at that date.

SSC responds that it could not have effectively litigated the claims involving the CCTV commissions until the Pennsylvania case was decided by the Third Circuit's opinion. (Paper 9, at 10). The court disagrees with both assertions. First, based on the allegations SSC pleaded, it was the district court, in an Order dated May 26, 2004, that found that the commission schedule for CCTV products was 40% of gross revenue. (Paper 1, at ¶ 40). SSC, therefore, learned on May 26, 2004, that Winner had a better commission for CCTV sales than SSC – not when the Third Circuit issued its opinion. Second, the court disagrees with SSC's assertion that neither claim splitting nor res judicata applies because the claim could not have been effectively litigated. To support this proposition, SSC quotes a phrase from *In re Piper Aircraft Corp*., 244 F.3d 1289, 1301 (11th Cir. 2001). SSC takes the phrase out of context. The full quotation reads as follows: "The issue is not what effect the present claim might have had on the earlier one, but whether the same facts are involved in both cases, so that the present claim could have been effectively litigated

14

with the prior one." *Id.* at 1301 (quoting *In re Baudoin*, 981 F.2d 736, 743 (5th Cir. 1993)).  Thus, this quotation stands for the proposition that, for purposes of res judicata, the issue is whether the same facts are involved in both cases so that the second claim could have been effectively litigated with the first claim.  The quotation does not stand for the proposition that a party's ability effectively to litigate a second claim will prevent the application of res judicata.

Here, the facts that give rise to the present lawsuit and to the claims in *Sensormatic I* are essentially the same: the terms in the SSC-Sensormatic Franchise Agreement and the Winner franchise agreement, including the terms involving the commission schedules and the More Favorable Contracts clause.  These facts are all part of the same transaction or series of transactions, i.e., the Franchise Agreements.  SSC could have asserted a claim seeking all of the benefits of the Winner franchise long before now, but it chose not to.  "Rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment bars litigation not only of every matter actually adjudicated in the earlier case, *but also of every claim that might have been presented*."  *In re Varat Enters.*, 81 F.3d at 1315.  Moreover, allowing SSC to pursue piecemeal claims based on the More Favorable Contracts clause "would frustrate the policies underlying the res judicata doctrine, put the parties to the cost and vexation

15

of multiple lawsuits, deplete judicial resources, foster inconsistent decision, and diminish reliance on judicial decisions." *Myers,* 102 F.Supp.2d at 1224. Thus, the court finds that the present claims are barred under the doctrine of claim splitting, and therefore, SSC's Counts I through V will be dismissed.

**IV. Conclusion**

For the forgoing reasons, the court will grant Sensormatic's motion to dismiss Counts I through V. A separate Order will be entered.

                            _____/s/_____
                            DEBORAH K. CHASANOW
                            United States District Judge